When recorded mail to:
Argent Mortgage Company, LLC
3 Park Plaza, 19th Floor
Irvine, CA 92614


*2016-04703-IN*
*IF15100081*
Loan Number: ████████

610          D8  002  001

This form was prepared by:   Argent Mortgage Company, LLC
Address: 3 Park Plaza, 10th Floor, Irvine, CA 92614          Tel. No.: ████████

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS That   Argent Mortgage Company, LLC

organized and existing under the laws of the State of Delaware, party of the first part, for value received, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, sell, assign, transfer and set over

unto ✗ _____

organized and existing under the laws of _____, party of the second part, its

successors and assigns, a certain indenture of mortgage dated the 26th  day of  September, 2006,

made by          ✱ *Citigroup Mortgage Loan Trust, Inc,*
*Asset-Backed Pass-Through Certificates,*
*Series 2007-AMC1, U.S. Bank National*
JAMES L WIRSING, Jr.          *Association, as trustee*

to it, securing the payment of one promissory note therein described for the sum of   one hundred four thousand five hundred fifty and 00/100
Dollars ($  104,550.00   ), and all its rights, title and interest in and to the premises situated in the county of  LAPORTE   , State of Indiana, and described in said mortgage as follows, to-wit

**"EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF"**

which said mortgage is recorded in the office of the Recorder of  LAPORTE   County,

State of Indiana, in Book No.  —  , at Page  –   as Document No. *2006R-17664*

Together with the said note therein described and the money due or to grow due thereon, with the interest:  8.950%

TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns, forever, subject only to the provisions in the said indenture of mortgage contained.

IN WITNESS WHEREOF, the party of the first  part has caused this instrument to be executed in its name by its agent and its corporate seal to be hereunto affixed this  10/03/2006.

Argent Mortgage Company, LLC

By _____
Luis Jimenez - Agent

State of  Illinois
County of  Cook

*(Corporate Seal)*
ARGENT MORTGAGE COMPANY, L.L.C.
LIMITED LIABILITY COMPANY
JULY 3 2001
DELAWARE

SCS

On  10/03/2006  before me,  Ava K. Gaitalzis
personally appeared  Luis Jimenez

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which is the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____ (Seal)
Ava K. Gaitalzis

OFFICIAL SEAL
Ava K Gaitatzis
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Nov. 13, 2007

750-IN1 (*2/2005) Rev.03

**BORROWER NAME:   WIRSING**

**LOAN NUMBER:**

# EXHIBIT A                                   LEGAL DESCRIPTION

EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

Appendix A

LOT 6 IN BLOCK 6 IN VILLAGE GREEN SUBDIVISION FIRST ADDITION IN THE CITY OF MICHIGAN CITY, INDIANA AS RECORDED IN PLATE BOOK 11 PAGE 152 IN THE OFFICE OF THE RECORDER OF LAPORTE COUNTY, INDIANA.

SUBJECT TO COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS OF RECORD AND SUBJECT TO ALL ZONING ORDINANCES.

PARCEL NUMBER:

COMMONLY KNOWN AS: 3517 LEXINGTON ROAD, MICHIGAN CITY, INDIANA 46360

Loan No.

# FIXED RATE NOTE

## THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

September 26, 2006      Rolling Meadows      IL
[Date]      [City]      [State]

3517 LEXINGTON RD., MICHIGAN CITY, IN  46360
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 104,550.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.950 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on  November 1, 2006.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on  October 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B)  Amount of Monthly Payments

My monthly payments will be in the amount of U.S. $837.48.

### 4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time as provided for in this paragraph. If within the first  3.00 year(s) from the date of execution of the Mortgage, Deed of Trust or Security Deed which secures this Note, I prepay in any 12 month period an amount exceeding 20% of the original principal balance under this Note, I will pay a prepayment charge to Note Holder equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal balance under this Note.This prepayment charge will not exceed 2% of the original loan amount.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder.

The amount of the charge will be 6.000 % of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

#### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials

1 of 2

09/26/2006 11:38:41 AM

Loan No. _____

**(D)   No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E)   Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.   GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9.   WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
    Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.
    If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Borrower:   JAMES L. WIRSING, Jr.                                    (Seal)
SSN:

_____   (Seal)
Borrower:
SSN:

PAY TO THE ORDER OF _____   (Seal)
Borrower:
**WITHOUT RECOURSE**
ARGENT MORTGAGE COMPANY, LLC

BY: _____
SAM MARZOUK, PRESIDENT

BY: _____   (Seal)
Borrower: GREGORY F. HANSON, C.F.O.
SSN:

Initials: _____

09/26/2006 11:39:41 AM

200-2IN (02/2005)Rev. 01

RECORDING REQUESTED BY:
Bank of America, N.A.
400 National Way
Simi Valley, CA 93065
CA6-919-02-46



Loan #:

_____[Space Above This Line For Recording Data]_____

### LOAN MODIFICATION AGREEMENT

Borrower(s) and Mortgagor(s) ("I," "my," or "me"): JAMES L WIRSING
Lender or Servicer ("Lender"): Bank of America, N.A.
Date of mortgage, deed of trust, or security deed (the "Mortgage") and Note (the "Note"):
September 30, 2008

Loan Number
Recordation Information: Original Mortgage recorded on the 6th of October, 2008 in Book No. N/A Page
    No. N/A as Document No. 2008R-17664 in the Official Records of LA PORTE County, in the State of
    Indiana.
Property Address: 3517 LEXINGTON RD MICHIGAN CITY, IN 46360 (the "Property")
                (See Attached Exhibit A for Legal Description)

Subject to the conditions set forth below, this Loan Modification Agreement ("Agreement") amends and
supplements (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage
and Note together, as they may previously have been amended, are referred to as the "Loan Documents."
Any capitalized term used in this Agreement, but not defined below, has the meaning given to it in the
Loan Documents.

Lender and I agree as follows:

1.  My Representations and Covenants. I certify, represent to Lender, covenant, and agree:

    A.  The Property is a residential property and is occupied.

    B.  The Property has not been condemned.

    C.  There has been no impermissible change in the ownership of the Property since I signed the
        Loan Documents. A permissible change would be any transfer that Lender is required by law to
        allow, such as a transfer to add or remove a family member, spouse or domestic partner of the
        undersigned in the event of a death, divorce, or marriage.

    D.  All documents and information I have provided to Lender in connection with this Agreement,
        including the documents and information regarding my eligibility for this loan modification, are
        true and correct.

2.  Acknowledgements and Preconditions to Modification. This Agreement will take effect on the later
    of the Modification Effective Date or the date Lender signs this Agreement or, if I am a debtor in a
    bankruptcy case, the date the Bankruptcy Court approves this Loan Modification Agreement, but
    only if I meet all of the following requirements:

    A.  I make each of the payments described in the Trial Period Plan ("TPP") agreement on or before
        the date each payment is due.

    B.  I return to Lender an executed and notarized copy of this Agreement on August 1, 2012 or
        prior to (the "Modification Effective Date").

**LOAN MODIFICATION AGREEMENT (Revised—May 2011)**
One- to Four-Unit Properties

C.  The representations and warranties I made in Section 1 of this Agreement, titled, "My Representations and Covenants" must be true and correct on the Modification Effective Date, and each of the terms set forth in the "Acknowledgements and Preconditions to Modification" must be satisfied before the Modification Effective Date.

    (i)  If prior to the Modification Effective Date, Lender determines that I have not met any of the Preconditions, the Loan Documents will not be modified and Lender will have all of the rights and remedies provided by the unmodified terms of the Loan Documents (subject to limitations imposed by applicable bankruptcy law if I am a debtor in a bankruptcy case or obtained a discharge of my debt under the Loan Documents).

    (i)  If this Agreement does not become effective, my Loan will continue to be serviced under the unmodified terms of the Loan Documents. If this Agreement becomes effective but Lender subsequently discovers any of the Preconditions were not met, Lender may void the modification and the Loan will revert to the unmodified terms of the Loan Documents.

3.  The Modification.

A.  The Maturity Date will be October 1, 2036. (The "Scheduled Maturity Date").

B.  The loan terms set forth in this Agreement shall supersede any contrary provisions in the Loan Documents.

C.  The new principal balance of my Note will be $141,843.65 (the "New Principal Balance"). The New Principal Balance of my Note will include amounts and arrearages that are past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs required to be paid by Lender, but excluding unpaid late charges, collectively, "Unpaid Amounts") in the amount of $39,489.79. This Unpaid Amount does not include interest in the amount of $1,133.01 which will be permanently forgiven. All unpaid late fees will be waived. I understand that by adding the Unpaid Amounts to the outstanding principal balance, with the exception of those Deferred Amounts as defined below, the added Unpaid Amounts will accrue interest based on the interest rate in effect from time to time under this Agreement. This means interest may now accrue on a portion of the unpaid amount which is comprised of unpaid interest added to the outstanding principal balance, which would not happen without this Agreement.

A total of $28,753.65 of the New Principal Balance shall be deferred (the "Deferred Principal Balance"). The Deferred Principal Balance will be treated as a non-interest bearing principal forbearance and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "New Interest Bearing Principal Balance" and is in the amount of $113,090.00. As set forth below, interest will begin to accrue on the New Interest-Bearing Principal Balance on the Modification Effective Date. My first new monthly payment on the New Interest-Bearing Principal Balance will be as set forth below.

My new interest rate and payment schedule is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-25 | 4.250% | 7/1/2012 | $623.32 | $308.49 May adjust periodically | $931.81 May adjust periodically | 8/1/2012 | 291 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

IF MY LOAN HAS A BALLOON BALANCE AT THE SCHEDULED MATURITY DATE, LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, I MAY HAVE TO REPAY THIS LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THIS LOAN. ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATES PREVAILING AT THAT

TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

THE AMOUNT OF THE FINAL PAYMENT ON THIS LOAN, ASSUMING ALL SCHEDULED PRINCIPAL PAYMENTS ARE MADE IN ACCORDANCE WITH THIS MODIFICATION AGREEMENT, IS $29,376.97.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If I make a partial prepayment of Principal, Lender will apply that partial prepayment to the New Interest Bearing Principal Balance. However, if the partial prepayment amount equals or exceeds the New Interest Bearing Principal Balance, Lender will instead apply that partial prepayment as follows:

    (1)    to the Deferred Principal Balance, if any, and
    (2)    then to the New Interest Bearing Principal Balance.

4. **Additional Agreements.**

A. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I, "my," or "me." In this Agreement, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

B. All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing.

C. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

D. Except as modified by this Agreement, I will comply, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

E. IF I WAS DISCHARGED IN BANKRUPTCY, THIS AGREEMENT IS NON-RECOURSE – NO PERSONAL LIABILITY.
If I previously filed for bankruptcy and obtained a discharge of my debt under the Loan Documents, then notwithstanding any other provision in this Agreement to the contrary, Lender specifically agrees that:

(i) This Agreement is non-recourse, and I will not have any personal liability for any debt under the Loan Documents or pursuant to this Agreement.

(ii) If I do not make the payments required under this Agreement, Lender will have no right to collect those payments or any other debt under the Loan Documents or this Agreement from me as a personal liability. Lender's sole recourse will be to enforce its security interest in the Property pursuant to the Mortgage through foreclosure or other in rem remedies, and I will not have any personal liability or obligation to pay for any remaining deficiency or other amounts owing under the Loan Documents and this Agreement that are not satisfied from the proceeds of any sale or other disposition of the Property.

(iii) This is not a reaffirmation agreement, and I am not reaffirming any debt under the Loan Documents.

(iv) In the event of any conflict between the provisions of this paragraph 4(E) and any other provision of this Agreement, the provisions of this paragraph 4(E) shall control. Without limiting the foregoing, no other provision of this Agreement (including, without limitation, paragraphs 4(D), 4(F), 4(G), or 4(K)) shall be construed as reaffirming, or imposing any personal liability on me for, any debt under the Loan Documents or this Agreement.

F. The Loan Documents, as modified by this Agreement, are duly valid, binding agreements, and enforceable in accordance with their terms and are hereby reaffirmed. All terms and provisions

of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. As of the Modification Effective Date, Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage Loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective and the Agreement will be null and void. I authorize Lender to attach an Exhibit A to this Agreement that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording.

K. If an error is detected after execution of this Agreement, I will execute such other documents as may be reasonably necessary to (1) consummate the terms and conditions of this Agreement or (2) correct the terms and conditions of this Agreement. I understand that, under such circumstances, I will sign a corrected Agreement or a letter agreement containing the correction. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I do not sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a loan modification.

L. I acknowledge that any principal forgiveness shall be reported to the Internal Revenue Service and may have tax consequences. I understand that I may want to seek the advice of a tax professional.

M. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

N. Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (1) a state or federal government entity; (2) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (3) companies that perform support services for Lender, and (4) any HUD-certified housing counselor.

O. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documentation Lender deems necessary. If the Note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the Note. I will deliver such requested documents within ten days after I receive Lender's written request.

P. The mortgage insurance premiums on my loan, if applicable, may increase if capitalization increases my outstanding principal balance. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of this Agreement.

Q. If my Loan Documents govern a home equity loan or line of credit, as of the Modification Effective Date, I terminate my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. If Lender previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, I confirm that I cannot obtain additional advances.

R. If I have a loan with Borrower's Protection Plan® (BPP) under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1.866.554.2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP.

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1.866.317.5116.

S. Any optional product(s) I may have purchased after the closing of my loan, the cost for which I agreed to have added to my Total Monthly Payment, will continue (1) in force as long as I add the amount due and owing to my Total Monthly Payment each month and (2) to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (1) notify the provider of the optional product of my request to cancel or (2) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. If I have questions about any optional product(s) I may have purchased, I will call Bank of America at 1-800-641-5298.

In Witness Whereof, Lender and I/we have executed this Agreement.

IF I OBTAINED A BANKRUPTCY DISCHARGE OF THE DEBT UNDER THE LOAN DOCUMENTS, THIS AGREEMENT IS NON-RECOURSE AND I HAVE NO PERSONAL LIABILITY, AS PROVIDED IN PARAGRAPH 4(E) OF THIS AGREEMENT.

_James L. Wirsing_          7-6-2012
JAMES L WIRSING                            Date

STATE OF _Indiana_

County of _La Porte_

On _7-6-2012_, before me, _Laura L. Lalone_, Notary Public,

personally appeared _James L. Wirsing_

Personally known to me, (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.          Signature _Laura L. Lalone_

> LAURA L. LALONE
> Notary Public- Seal
> State of Indiana
> My Commission Expires Sep 19, 2016

---

Do Not Write Below This Line

---

THIS SECTION IS FOR USE ONLY BY BANK OF AMERICA, N.A.

BANK OF AMERICA, N.A.

By: _____          Date: _____

_____
Name (Printed)

STATE OF _____

County of_____

On _____, before me,_____, Notary Public, personally appeared

_____ personally known to me, (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.          Signature:_____

_____
Mortgage Electronic Registration Systems, Inc. - Nominee For Bank of America, N.A.

By: _____

_____
Date

Summary of Your Modified Mortgage

NEW PRINCIPAL BALANCE. Your new loan balance is $141,843.65. Please refer to section 3.C. in the Modification Agreement.

DEFERRED PRINCIPAL. Any unpaid past due amounts from the date of the original solicitation (Prior Offer), including unpaid interest (calculated at the rate set forth in the original solicitation documents), servicing expenses paid to third parties, and, if applicable, real estate taxes and insurance paid on your behalf, have been capitalized as a non-interest bearing balloon. This amount is due at the end of the loan term, when you refinance or when you sell or transfer an interest in the property.

NEW MORTGAGE PAYMENT. Your new modified monthly mortgage payment is $931.81 and may be subject to increase annually. Please refer to the chart in section 3.C. in the Modification Agreement for further details. This amount includes principal and interest payments on the New Principal balance, plus any escrow amounts. This amount will change if your escrow payment changes as well as when your interest rate changes. Your total monthly payments will be due the same day each month starting on August 1, 2012.

INTEREST RATE. The current interest rate is 8.95%. Your interest rate after modification will be 4.250% and may be subject to increase annually thereafter to the maximum interest rate, not to exceed 4.250%. Please refer to the chart in section 3.C. in the Modification Agreement for further details.

PRINCIPAL FORGIVENESS. $1,133.01 of your current principal balance will be forgiven when the modification takes effect on the Modification Effective Date. This means that if all conditions of the modification are met, you will no longer owe this amount and it will be permanently subtracted from your loan balance. Refer to section 4.L. in the Modification Agreement. Please consult a tax adviser to understand any tax implications that may be associated with receiving a modification that provides principal forgiveness. If you do not wish to receive a modification that includes principal forgiveness, please call us as we may have other modification options available for you.

ESCROW ACCOUNT. Bank of America, N.A. will maintain an escrow account for this loan. Therefore, you will be responsible for payment of all unpaid servicing expenses paid to third parties on your behalf, beginning on the Modification Effective Date, including taxes and insurance. In addition, such amounts paid by the servicer in the amount of $12,404.80 have been added to your Deferred Principal. You do not need to pay these past due amounts separately.

FEES. Any unpaid fees that have been charged after the Prior Modification Effective date will be waived on the Modification Effective Date; any that have already been paid will be refunded in the form of a credit to the modified principal balance, starting with any deferred amount when applicable.

OTHER. You agree that Bank of America, N.A. will hold funds, not already applied, in a non-interest bearing account until the modification process is complete. Any amounts held in this account during the modification process will be applied to any outstanding balance that you owe, reducing the amount that would otherwise be added to your modified principal balance.

REPRESENTATIONS. Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us.

SUMMARY NON-BINDING. THIS SUMMARY OF YOUR MODIFIED MORTGAGE ("SUMMARY") IS NOT A LEGALLY-BINDING AGREEMENT AND IS SUPERCEDED BY THE LOAN MODIFICATION AND RELEASE AGREEMENT ("AGREEMENT"). IF THERE ARE ANY INCONSISTENCIES BETWEEN THIS SUMMARY AND THE AGREEMENT, THE AGREEMENT CONTROLS.

**Appendix A**

LOT 6 IN BLOCK 6 IN VILLAGE GREEN SUBDIVISION FIRST ADDITION IN THE CITY OF MICHIGAN CITY, INDIANA AS RECORDED IN PLATE BOOK 11 PAGE 152 IN THE OFFICE OF THE RECORDER OF LAPORTE COUNTY, INDIANA.

SUBJECT TO COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS OF RECORD AND SUBJECT TO ALL ZONING ORDINANCES.

PARCEL NUMBER: █████████

COMMONLY KNOWN AS: 3517 LEXINGTON ROAD, MICHIGAN CITY, INDIANA 46360

**DO NOT WRITE BELOW THIS LINE.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
    By: Urban Settlement Services, LLC, its attorney in fact

By:                                         Dated:  4/2/2013

Name: Patrick Vigil
Title : Assistant Secretary



LAPORTE COUNTY RECORDER
BARBARA DEAN

2006R-17664

10/06/2006    11:40:47AM

RECORDING FEE    $45.00
PAGES:  16

Return To:
Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt 19 North
Palm Harbor, FL 34683

─────────────────── [Space Above This Line F

CHI 527167          MORTG



610                    D2  001   001

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 26, 2006 together with all Riders to this document.
(B) "Borrower" is JAMES L WIRSING, Jr.

Borrower is the mortgagor under this Security Instrument.

INDIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3015  1/01

-6(IN) (0005)
Page 1 of 15                    Initials JW

VMP MORTGAGE FORMS - (800)521-7291

09/26/2006 11:39:41

(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is 3 Park Plaza - 10th Floor  Irvine, CA 92614

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated September 26, 2006
The Note states that Borrower owes Lender one hundred four thousand five hundred
fifty and 00/100                                                        Dollars
(U.S. $104,550.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1, 2036         .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider          ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used



in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the
County                                                                        [Type of Recording Jurisdiction]
of LAPORTE                                                                 [Name of Recording Jurisdiction] :
EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: ██████████████         which currently has the address of
3517 LEXINGTON RD.                                                          [Street]
MICHIGAN CITY                                    [City], Indiana 46360        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.



 -6(IN) (0005)                     Page 3 of 15     09/26/2006 11:39:41   Form 3015   1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to. bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;





(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or



ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and



Initials JLJ

-6(IN) (0005)        Page 6 of 15        09/26/2006 11:39:41    Form 3015  1/01

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.





**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by any insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).




As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if





-6(IN) (0005)          Page 9 of 15     09/26/2006 11:39:41   Form 3015  1/01

Initials JLJ

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's





Initials: ____

-6(IN) (0005)                    Page 10 of 15    09/26/2006 11:39:41    Form 3015  1/01

change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,





-6(IN) (0005)    Page 11 of 15    09/26/2006 11:39:41    Form 3015  1/01

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.





BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____


_____          _____ (Seal)
JAMES L WISSING, Jr.                                                     -Borrower


_____          _____ (Seal)
                                                                                                -Borrower


_____ (Seal)   _____ (Seal)
                                       -Borrower                                             -Borrower


_____ (Seal)   _____ (Seal)
                                       -Borrower                                             -Borrower


_____ (Seal)   _____ (Seal)
                                       -Borrower                                             -Borrower

**STATE OF INDIANA,**                    County ss: LAPORTE

On this __26__ day of __SEPTEMBER__ 2006 before me,
    Day                         Month/Year

the undersigned, a Notary Public in and for said county, personally appeared

JAMES L WIRSING JR

and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

OFFICIAL SEAL
PATRICK D. BERGS
NOTARY PUBLIC SEAL
STATE OF INDIANA
MY COMMISSION EXPIRES 5/15/08
Porter County

My Commission Expires: 5/15/08

Notary Public

This instrument was prepared by:
Kathleen Hoffman
2550 Golf Road, East Tower, 10th Floor, Rolling Meadows, IL 60008

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each social security number in this document, unless required by law.

Signature of Preparer    PATRICK D BERGS

Page 15 of 15

09/26/2006 11:39:41 AM

## Appendix A

LOT 6 IN BLOCK 6 IN VILLAGE GREEN SUBDIVISION FIRST ADDITION IN THE CITY OF MICHIGAN CITY, INDIANA AS RECORDED IN PLATE BOOK 11 PAGE 152 IN THE OFFICE OF THE RECORDER OF LAPORTE COUNTY, INDIANA.

SUBJECT TO COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS OF RECORD AND SUBJECT TO ALL ZONING ORDINANCES.

PARCEL NUMBER:

COMMONLY KNOWN AS: 3517 LEXINGTON ROAD, MICHIGAN CITY, INDIANA 46360